UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PLAINTIFF

ANDRO MENDOZA )
)
)
VS ) CASE# **305CV01195 (RNC)**
)
)

DEFENDANTS

EMILY BYRNE;
JOSEPH BYRNE;
DIANE BYRNE;
JEFFREY L. SHAW;
JOSEPH L. GEGENY

**AMMENDED COMPLAINT PURSUANT TO RULE 15(a), FED.R.CIV.P**

**NOW INTO COURT,** come Plaintiff Andro Mendoza, and upon advising the Court that no responsive pleadings have been filed by the defendants, amend original complaint filed on July 27, 2005, pursuant to Tule 15 (a), Fed.R.Civ. P., in the following:

**I.**

Plaintiff amends previous Complaint in its entirety so that it now reads as follows:

**COMPLAINT AND JURY DEMAND ON ALL COUNTS**

INTRODUCTION

ANDRO MENDOZA ["Plaintiff"] of Connecticut in his capacity as an individual asserts the following claims against the Defendants' in the above-entitled action:

(1) VIOLATION OF 42 U.S.C. 1985;

(2) VIOLATION OF 42 U.S.C. 1983;

(3) VIOLATION OF 42 U.S.C. 1981;

(4) VIOLATION OF 42 U.S.C. 12101;

(5) VIOLATION OF 18 U.S.C. 61;

(6) VIOLATION OF 18 U.S.C. 241;

(7) VIOLATION OF UNIFORM CHILD CUSTODY JURISDICTION ACT (UCCJA)

(8) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;

(9) NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

## JURISDICTION

1. Jurisdiction of this Court arises under 28 U.S.C. §§ 1331, 1332, 1343, 1443, and 1367 (a); 42 U.S.C. §§1983, 1985; 18 U.S.C. § 241; 18 U.S.C. §§ 1961-1968

2. Jurisdiction of this court is authorized by Fed. Rule Civ. Proc. 18(a), and arises under the doctrine of pendent jurisdiction set forth in Mine Workers v. Gibbs, 383 U.S. 715 (1966)

## PARTIES

3. Plaintiff Mr. Mendoza ["Mendoza"], is a natural disabled veteran in remission from cancer residing in Milford, Connecticut, United States of America; a resident of Connecticut during all relevant times of this action.

4. Defendant Emily Byrne ["E. Byrne"], is a natural person and resident of Milford, Connecticut, United States of America during all relevant times of this action. Defendant is on Family Medical Leave (FMLA) / Short-Term Disability (STD) that was initiated effective March 13, 2005 while employed with Yale New Haven Health. Additionally, Defendant maintains an active two-year professional relationship with Norwalk Hospital, Norwalk, CT and a contractual consultative relationship with Dr. Dimitris Papolos, MD, Westport, CT. Presently, Defendant is

convalescing at her parents Joseph and Diane Byrne residence in Northfield, Vermont. Defendant E. Byrne and Plaintiff conceived a child on or about August 12, 2004.

5. Defendant Joseph Byrne ["J. Byrne"], is a natural person residing in Northfield, Vermont, United States of America during all relevant times of this action. Joseph Byrne is an Assistant Provost employed by Norwich University and Father of Emily Byrne.

6. Defendant Diane Byrne ["D. Byrne"], is a natural person residing in Northfield, Vermont, United States of America during all relevant times of this action. Diane Byrne is an Associate Professor employed by Norwich University. Diane Byrne is the wife of Joseph Byrne and Mother of Emily Byrne.

7. Defendant Jeffrey L. Shaw ["J. Shaw"], is a natural person residing in Vermont, United States of America during all relevant times of this action. Jeffrey L. Shaw is an indispensable witness. Defendant is the Chief of Police and employed by the Northfield Town & Village.

8. Defendant Joseph L. Gegeny ["J. Gegeny"], is a natural person residing in Connecticut, United States of America during all relevant times of this action. Joseph L. Gegeny is a Practicing Attorney admitted to Connecticut in 2003. J. Gegeny maintains a Law Practice at 64 Wall Street, Suite 207, Norwalk, Connecticut 06850 and is the Attorney of Record for Emily Byrne.

## FACTS AS TO MR. MENDOZA

9. In summary, Plaintiff is a model father who from a previous marriage has two children and has always been active in the life of his two children since birth. At the time of this action Plaintiff continues to emotionally and financially support one 14-year-old daughter and one 12-year-old son with Autism.

10. Plaintiff and Defendant E. Byrne met on or about May 2004, and executed a one-year residential lease on or about June 2004 for a two-bedroom home on 112 Shorefront Street, Milford, Connecticut 06460 where both Plaintiff and Defendant E. Byrne cohabitated.

11. On or about July 2004 Defendant E. Byrne communicated to Plaintiff she previously experienced years of various abuses (physical, emotional and sexual) that caused her to flee her childhood home as a teenager thirteen years prior. Additionally, Defendant E. Byrne communicated she experienced two suicide attempts that coincided with major events in her adult life.

12. Plaintiff's unconditional support of Defendant E. Byrne was the greatest contributing factor in Defendant E. Byrne ability to improve her emotional well being while working for Yale New Haven Health, Greenwich, Connecticut, Norwalk Hospital, Norwalk, Connecticut, and Dr. Dimitri Papolos, MD, Westport, Connecticut only months after her last suicide attempt (January 2004).

13. On or about July 2004 Defendant E. Byrne met a male person in Larchmont, New York on or about 1900 hours and returned home on or about 0034 hours. Defendant E. Byrne smelled of alcohol and attributed her delay in returning home to being lost. This behavior was inconsistent and unexplainable.

13. On or about August 12, 2004 Plaintiff caused Defendant E. Byrne to become pregnant with child.

14. On or about September 2004 Defendant E. Byrne performed an over-the-counter pregnancy test that was positive times three. Defendant E. Byrne informed Plaintiff of positive test and Plaintiff happily embraced Defendant E. Byrne. Yale New Haven Health Laboratory, Greenwich, Connecticut conducted Beta HcG Pregnancy Test and confirmed results.

15. On or about September 2004 Plaintiff composed email acknowledging and asserting parentage and forwarded to Defendant E. Byrne, J. Byrne, D. Byrne and Plaintiff immediate family.

16. On or about September 2004 Plaintiff and Defendant E. Byrne entered relationship counseling to develop healthy communication techniques and identify potential for creating a joint plan of action mindful that Plaintiff and Defendant E. Byrne were expecting child.

17. Defendant E. Byrne, J. Byrne, and D. Byrne acknowledged Plaintiff as the natural father and Plaintiff reaffirmed he was the natural father by requesting an introductory meeting with Defendant E. Byrne parents. Defendant J. Byrne, and D. Byrne declined to meet. Plaintiff was confused given potential for child to be born out of wedlock and importance of proactive parental relations between grandparents.

18. On or about September 11, 2004 Defendant E. Byrne and Plaintiff registered as parishioners at St. Mary's Roman Catholic Church, 70 Gulf Street, Milford, Connecticut 06460 and inquired about marital planning and faith based education.

19. On or about October 13, 2004 Defendant E. Byrne ended counseling after three sessions citing irreconcilable differences. However, Defendant E. Byrne returned to joint residence as usual. Plaintiff was distraught and confused.

20. On or about October 14, 2004 Defendant E. Byrne verbally attacked Plaintiff by yelling malicious and discriminatory remarks regarding Plaintiff disability and lack of full-time employment. Additionally, Defendant E. Byrne threatened to unilaterally deprive Plaintiff of natural parent rights once child born as a tactic of intimidation. While under a barrage of verbal attacks Plaintiff was distraught, confused and fearful.

21. On or about October 25, 2004 Defendant E. Byrne requested Plaintiff reconsider relationship counseling even though she had abruptly ended counseling sessions previously. Plaintiff remained confused with Defendant E. Byrne frequent bouts of ambivalence.

22. On or about November 9, 2004 Plaintiff was diagnosed with Cancer necessitating immediate medical intervention.

23. Fearful Defendant E. Byrne will continue to verbally demean Plaintiff and threaten to unilaterally deprive Plaintiff of natural parental rights once child born because Plaintiff lacked full-time job. On or about November 11, 2004 to avoid further ridicule from Defendant E. Byrne Plaintiff traveled to Chicago, Illinois for a job interview with ChapterHouse, LLC. Surgery was rescheduled from November 9, 2004 to November 19, 2004.

24. On or about November 18, 2004 Plaintiff father visits Plaintiff and Defendant E. Byrne from San Antonio, Texas prior to Plaintiff surgery. Defendant E. Byrne acknowledged Plaintiff as putative father and asked Plaintiff's father for support in encouraging Plaintiff to reconsider relationship counseling.

25. From the period of November 19 2004 to January 15, 2005 Plaintiff underwent Radical Orchiectomy Surgery and began daily Radiation Oncology Therapy. During this period, Defendant E. Byrne often expressed romantic desires of love to Plaintiff then would have extreme emotional outbursts the next when Plaintiff did not reciprocate the same feelings.

26. On or about November 21, 2004 while on Physician Ordered Bed Rest Plaintiff travels to Tampa Bay, Florida for interview with Bausch and Lomb. Though Plaintiff is experiencing substantial pain from surgical site, Plaintiff feels compelled to demonstrate commitment to obtaining full-time employment to Defendant E. Byrne by attending interview. Plaintiff was distraught, confused and in pain,

27. On or about December 23, 2004 Defendant E. Byrne leaves Plaintiff for the Christmas Holidays yet, calls on a daily basis to state she loves Plaintiff. Plaintiff is confused and distraught.

28. On or about January 17, 2005 due to an irretrievable breakdown in the relationship, Defendant E. Byrne verbally threatens to again deprive Plaintiff of establishing natural parental and child contact rights once child is born.

29. On or about February 2004 Plaintiff and Defendant E. Byrne attend Ultrasound appointment at Greenwich Ultrasound, Greenwich, Connecticut and see 3-D Image of unborn child.

30. On March 8, 2005 Plaintiff received an Offer of Employment from Abbott Laboratories Pharmaceutical Products Division. Plaintiff contacted Defendant E. Byrne by phone and shared good news. Initially, Defendant E. Byrne accepted news positively and Plaintiff was able to finally to demonstrate to Defendant E. Byrne satisfaction of being able to obtain gainful employment prior to delivery of expecting child. Plaintiff communicated to Defendant E. Byrne that job offer acceptance would require joint relocation to Chicago, Illinois and accepting employment offer would allow opportunity for Defendant E. Byrne to take an extended maternity period off from work.

31. On or about March 10, 2005 Defendant E. Byrne traveled to Northfield Vermont to visit parents.

32. On or about March 11, 2004 Defendant E. Byrne contacted Plaintiff at residence and informed Plaintiff that she was briefly hospitalized for Braxton-Hicks while visiting Defendant J. Byrne and Defendant D. Byrne in Northfield, Vermont. Defendant E. Byrne stated she expected to be discharged on bed rest once examined by her physician. During the phone call Plaintiff stated he will travel to Vermont and drive Defendant E. Byrne back home to Connecticut once discharged. During the call Defendant E. Byrne communicated the physician was preparing to examine her and she would return the call once she received an update. Plaintiff never received a return call. Plaintiff was confused and distraught with Defendant E. Byrne behavior.

33. On or about March 11, 2004 Plaintiff contacted hospital in Vermont where Defendant E. Byrne was previously admitted. Plaintiff was informed Defendant E. Byrne was discharged to home.

34. On or about March 11, 2004 to March 22, 2004 Plaintiff attempted on various occasions via phone and email to contact Defendant E. Byrne at Defendant J. Byrne and Defendant D. Byrne home but calls were either refused or email never returned. Plaintiff was distraught and confused regarding the health and well being of unborn child.

35. On or about March 23, 2005 Plaintiff received a disturbing email from Defendant E. Byrne stating she did not wish to have "direct contact". Furthermore, Defendant E. Byrne utilized the email to demean and attack the Plaintiff about Plaintiff disability and lack of full-time employment. Additionally, Defendant communicated baby's health was "ok" and stated she would contact plaintiff "in the future".

36. On March 23, 2005 Plaintiff deferred employment offer due to uncertainty regarding Defendant E. Byrne and unborn child. Plaintiff was emotionally distraught and confused. Plaintiff had made numerous and substantial efforts to obtain employment prior to the birth of unborn child yet, Defendant E. Byrne untimely actions necessitated that Plaintiff defer any potential relocation. Defendant E. Byrne previously threatened to deprive the Plaintiff on two occasions of a natural parental relationship with child and ultimately Plaintiff feared Defendant E. Byrne would make good on threats.

37. By Defendant J. Byrne and Defendant D. Byrne conspiring with Defendant E. Byrne to deny and conceal important medical information regarding unborn child Defendant E. Byrne separated Plaintiff from a primary means of physical self-support and future income. Defendant E. Byrne had numerous opportunities to quell uncertainty regarding unborn child however, Defendant E. Byrne and co-conspirators chose to create havoc and confusion causing Plaintiff extreme physical and emotional distress during a time that Plaintiff was recovering from Cancer Treatment.

38. Defendant J. Byrne and Defendant D. Byrne utilized professional and civic position(s) within Northfield, Vermont to influence, conspire and successfully deny Plaintiff parent child contact in concert with Defendant J. Shaw and Northfield Town and Village. Additionally, Defendant J.

Shaw conspired to deny Plaintiff access to Public Services and information regarding the health and well being of unborn child in violation of 42 U.S.C. §§ 1981; 1983; 1985; 12101

39. The Defendant's; E. Byrne, J. Byrne, D. Byrne and J. Shaw successfully intimidated Plaintiff.

40. Disingenuous actions by the Defendant E. Byrne and co-conspirators (J. Byrne and D. Byrne) deprived and continue to deprive Plaintiff natural parent child rights.

41. Plaintiff is the natural father of Baby Girl Byrne who is temporarily convalescing with Defendant E. Byrne and co-conspirators (J. Byrne and D. Byrne) in Northfield, Vermont. At the time of all relevant actions, Plaintiff asserted he was the putative father of child born out of wedlock on or about May 15, 2005.

42. At the time of filing, Plaintiff learned through a Motion filed by the Defendant J. Gegeny on-behalf of client Defendant E. Byrne in response to Plaintiff Paternity Claim submitted in New Haven County Regional Children's Probate Court, New Haven, Connecticut that Defendant E. Byrne actually gave birth to Maeve Byrne FKA Baby Girl Byrne on March 13, 2005 in Lebanon, New Hampshire.

43. For over four months Defendant E. Byrne and co-conspirators (J. Byrne and D. Byrne) maliciously led Plaintiff into believing that Maeve Byrne was born on or about May 15, 2005. By deceiving Plaintiff, Defendant E. Byrne and co-conspirators (J. Byrne and D. Byrne) withheld important paternal medical history vital to the care and well being of Maeve Byrne. Many premature births are genetic related and by Defendant E. Byrne denying medical providers access to direct paternal medical history the Defendant E. Byrne likely compromised and interfered with the timely administration of medically necessary treatment on-behalf of Maeve Byrne all in a malicious efforts to deny Plaintiff personal contact with his child.

44. Defendant E. Byrne is a permanent resident of Connecticut and has not lived in Vermont since fleeing from abuses at age seventeen; thirteen years prior. Defendant E. Byrne colluded

with co-conspirators (J. Byrne and D. Byrne) to deny Plaintiff Due Process, Procedural Due Process and Equal Protection Rights by attempting to blur jurisdictional boundaries contrary to UCCJA. Furthermore, with newborn child residing in Lebanon, New Hampshire the first forty-two days out seventy days of life child qualifies as a majority resident of New Hampshire yet, Defendant E. Byrne willfully and intentionally conspired to slant Plaintiff initiated Parentage Claim in Connecticut Probate Court by claiming Vermont residency though she lacked appropriate statutory requirements.

45. Defendant E. Byrne and co-conspirators (J. Byrne and D. Byrne) knowingly supported Defendant E. Byrne acts of fraud and conspired with Defendant E. Byrne to falsify legal documents to purport denial of Plaintiff Parentage and willfully deny Plaintiff constitutionally protected liberty interest in the companionship and society of his child.

46. On or about May 2005, Plaintiff concerned with lack of information regarding natural child contacted Northfield Police Department, Northfield, Vermont seeking verification of child welfare. Plaintiff informed Defendant J. Shaw he was the natural father and was concerned about the health and well being of newborn child. Upon visiting Defendants J. Byrne and D. Byrne residence Defendant J. Shaw stated Defendant E. Byrne disputed Parentage and Defendant J. Shaw refused to verify child welfare or provide verification of health and well being of child. Since estimated delivery date, Plaintiff had not seen child alive and well. Plaintiff further inquired of Defendant J. Shaw if official birth certificate or other means was utilized to verify parentage, Defendant J. Shaw laughed without verifying answering. Plaintiff was distraught and successfully intimidated by defendants.

47. On or about June 2005 Plaintiff contacted Defendant J. Shaw requesting child welfare verification. Defendant declined to assist.

48. On or about June 11, 2005 Plaintiff contacted Defendant J. Shaw and requested child welfare verification. Defendant declined to assist.

49. On or about June 17, 2005 Plaintiff traveled to Northfield, Vermont to request Child Welfare Verification and to deliver evidence-supporting request for verification. Plaintiff met with Officer on Duty who in turn contacted Defendant J. Shaw via phone and stated "Child was Safe" and informed Officer on Duty to immediately end and cease further communication with Plaintiff.

50. Defendant J. Shaw repeatedly intimidated Plaintiff and attempted to force Plaintiff to discontinue attempts at trying to obtain basic health and well being information about natural child. Defendant J. Shaw conspired and colluded with Defendant E. Byrne, J. Byrne and D. Byrne to deny Plaintiff verification of child welfare and parent child contact even though child was a resident of New Hampshire and many state laws had to be broken or ignored to achieve the Defendants common goal of conspiring to deny Plaintiff child contact rights.

51. On or about July 8, 2005 Plaintiff attended Hearing on Motion to Dismiss Plaintiff Parentage Claim in New Haven Regional Children's Probate Court. Defendant J. Gegeny represented Defendant E. Byrne in abstentia. During arguments Defendant J. Gegeny violated State of Connecticut 2005 Practice Book Guidelines regarding Attorney Professional Misconduct by colluded in manufacturing heresy evidence and abused position as an officer of the court. Defendant J. Gegeny inappropriately utilized heresy evidence without author consent and falsified context such that Defendant J. Gegeny engaged in the unauthorized practice of medicine without Vermont professional licensure. Additionally, Defendant J. Gegeny coordinated efforts were consistent with an underlying legal scheme aimed at slanting legal proceedings to deny Plaintiff *Pro Se* of natural parental rights in concert with the Defendant E. Byrne.

52. Plaintiff was distraught and fearful of Defendant J. Gegeny and co-conspirators E. Byrne and J. Shaw actions, which, successfully continue to displace him from his newborn child. Plaintiff learned on or about July 2005 that Defendant E. Byrne had a consensual affair during the period May 2004 to August 2004 with a former roommate herein named "Joe". It was also learned that Defendant E. Byrne previously terminated a pregnancy prior to her cohabitation with Plaintiff. These new insights provide a rare and honest glimpse of what the Defendant E. Byrne, J. Byrne and D. Byrne are willing to do to conspire and ensure Plaintiff is deceived and unable to

truthfully know what the circumstances are as they relate to his child Maeve Byrne. The fact that Defendant E. Byrne, J. Byrne and D. Byrne withheld basic information such as name and date of birth of child Plaintiff after previously acknowledging Plaintiff as father lends reasonable grounds for Plaintiff to seek judicial intervention.

53. Disingenuous actions by the Defendants' threatened to deprive the Plaintiff of normal contact with his child Maeve Byrne.

54. Defendant E. Byrne, J. Byrne and D. Byrne state of mind and effectiveness in coming together to circumvent the lawful procedure and to impose restrictions under the legal pretense of legal process harmed Plaintiff and Plaintiff child.

55. Many federal laws had to be broken to achieve the Defendant E. Byrne, J. Shaw and J. Gegeny common goal.

56. Relief is not available through state or federal agencies because of the unlawful precursory actions of the Defendants'.

**COUNT 1:**

**CONSPIRING TO INTERFERE WITH CIVIL RIGHTS**

Plaintiff repeats and re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 56 above with the same force and effect as if herein set forth.

57. At all relevant times the conduct of the Defendants' were subject to 42 U.S.C. 1985.

• (2) Obstructing justice; intimidating party, witness, or juror If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or

indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

• (3) Depriving persons of rights or privileges If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

58. By reason of the conduct of Defendants' that obstructed justice as described within 42 U.S.C. 1985; intimidated a witness as described within 42 U.S.C. 1985; and deprived the Plaintiff of Federal rights as described within 42 U.S.C. 1985, Plaintiff suffered harm and actual and consequential damages.

WHEREFORE, Plaintiff demands judgment, including interest, severally and jointly against

Defendants' for actual, special, compensatory and punitive damages in an amount deemed at time of trial to be just, fair and appropriate and attorney's fees and costs.

**COUNT 2:**

**CIVIL ACTION FOR DEPRIVATION OF RIGHTS**

59. Plaintiff repeats and re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 58 above with the same force and effect as if herein set forth.

60. At all relevant times the conduct of the Defendants' were subject to 42 U.S.C. 1983.

• Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

61. The Defendants' under color of state statute; regulation, custom, actions and usage deprived the Plaintiff of his rights, privileges and immunities secured by the Constitution and laws. Plaintiff suffered harm and actual and consequential damages.

WHEREFORE, Plaintiff demands judgment, including interest, severally and jointly against Defendants' for actual, special, compensatory and punitive damages in an amount deemed at time of trial to be just, fair and appropriate and attorney's fees and costs.

**COUNT 3:**

## EQUAL RIGHTS UNDER THE LAW

62. Plaintiff repeats and re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 61 above with the same force and effect as if herein set forth.

63. At all relevant times the conduct of the Defendants' were subject to 42 U.S.C. 1981.

• (a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exaction of every kind, and to no other.

• (c) Protection against impairment

The rights protected by this section are protected against impairment by non governmental discrimination and impairment under color of State law.

64. The Defendants' deprived the Plaintiff of his rights, privileges and immunities secured by the Constitution and laws. Plaintiff suffered harm and actual and consequential damages. As a direct result of the Defendants' actions the Plaintiff was encouraged to be attacked, attacked, intimidated, put in continuing anxiety and then processed devoid of protection or guaranteed civil liberties. Plaintiff has suffered damages including but not limited to the aforesaid damages.

WHEREFORE, Plaintiff demands judgment, including interest, severally and jointly against Defendants' for actual, special, compensatory and punitive damages in an amount deemed at time of trial to be just, fair and appropriate and attorney's fees and costs.

## COUNT 4:
## AMERICAN WITH DISABILITIES ACT OF 1990

65. Plaintiff repeats and re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 64 above with the same force and effect as if herein set forth.

66. At all relevant times the conduct of the Defendants' was subject to 42 U.S.C. 12101.

• (a) State and Local Government Activities
Give all people with disabilities an equal opportunity to benefit from all their programs, services, and activities (e.g. public education, employment, transportation, recreation, health care, social services, courts, voting, town meetings).

67. The Defendants' deprived the Plaintiff of his rights, privileges and immunities secured by the Constitution and laws. Plaintiff suffered harm and actual and consequential damages. As a direct result of the Defendants' actions the Plaintiff was denied equal access and opportunity to benefit from the Courts. Plaintiff has suffered damages including but not limited to the aforesaid damages.

WHEREFORE, Plaintiff demands judgment, including interest, severally and jointly against Defendants' for actual, special, compensatory and punitive damages in an amount deemed at time of trial to be just, fair and appropriate and attorney's fees and costs.

**COUNT 5:**
**CIVIL RICO**

68. Plaintiff repeats and re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 67 above with the same force and effect as if herein set forth.

69. The elements of a civil conspiracy are (1.) two or more persons; (2) an object to be accomplished; (3) an agreement on the object or course of action; (4) one or more unlawful overt acts; and (5) damages that are a direct result of those acts.

70. In furtherance of their objective, Defendants' did two or more predicate acts against the

Plaintiff. Those overt acts include, but are not limited to the following:

a. coordinating assaults made on the Plaintiff

b. enlisting and receiving agreement on a common goal by the respondent law enforcement officers

71. The pattern was to circumvent federal and state civil guarantees the Plaintiff had a right to.

WHEREFORE, Plaintiff demands judgment, including interest, severally and jointly against Defendants' for actual, special, compensatory and punitive damages in an amount deemed at time of trial to be just, fair and appropriate and attorney's fees and costs.

**COUNT 6:**
**CONSPIRACY AGAINST RIGHTS**

72. Plaintiff repeats and re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 71 above with the same force and effect as if herein set forth.

73. At all relevant times the conduct of the Defendants' was subject to 18 U.S.C. 241. If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured - They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

74. The Defendants' deprived the Plaintiff of his rights, privileges and immunities secured by the Constitution and laws. Plaintiff suffered harm and actual and consequential damages.

WHEREFORE, Plaintiff demands judgment, including interest, severally and jointly against Defendants' for actual, special, compensatory and punitive damages in an amount deemed at time of trial to be just, fair and appropriate and attorney's fees and costs.

**COUNT 7:**

**UNIFORM CHILD CUSTODY JURISDICTION ACT (UCCJA)**

75. Plaintiff repeats and re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 74 above with the same force and effect as if herein set forth.

76. At all relevant times the conduct of the Defendants' were subject to UCCJA.

Section I

- (a)The general purposes of this Act are to:

(1) avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(2) promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(3) assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

(4) discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

(5) deter abductions and other unilateral removals of children undertaken to obtain custody awards;

(6) avoid re-litigation of custody decisions of other states in this state in so far as feasible;

(7) facilitate the enforcement of custody decrees of other states;

(8) promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and

(9) make uniform the law of those states which enact it.

Section 24 *Priority*

- Upon the request of a party to a custody proceeding which raises a question of existence or exercise of jurisdiction under this Act the case shall be given calendar priority and handled expeditiously.

77. Judicial time spent in determining which court has or should exercise jurisdiction often prolongs the period of uncertainty and turmoil in a child's life more than is necessary. The need for speedy adjudication exists and Defendant E. Byrne and J. Gegeny have intentionally impeded any attempt at adjudicating outstanding issues by denying child and Plaintiff the submission of Defendant E. Byrne Pleading of Parentage to Guardian Ad Litem. By Defendant E. Byrne and J. Gegeny denying Plaintiff timely adjudication of UCCJA issues Plaintiff has found it necessary to employ the Federal Judicial Process to ensure the Defendant's are unable to circumvent the legal hierarchy causing the Plaintiff considerable burden as a *Pro Se* litigant.

WHEREFORE, Plaintiff demands judgment, including interest, severally and jointly against Defendants' for actual, special, compensatory and punitive damages in an amount deemed at time of trial to be just, fair and appropriate and attorney's fees and costs.

**COUNT 8:**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

78. Plaintiff repeats and re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 77 above with the same force and effect as if herein set forth.

79. Defendants' intentional and deliberate infliction of emotional distress on Plaintiff was a direct attempt to exacerbate a depressive episode. Defendants' were aware at the time of incidents that Plaintiff receives treatment for a Bipolar Disorder.

80. Defendants' intentionally and deliberately inflicted emotional distress by causing Plaintiff to decline offer of employment out of fear of losing a material parenting relationship with his newborn daughter.

81. As a direct result of the Defendant's extreme and outrageous conduct, Plaintiff was and will continue to be emotionally distressed due to the egregious actions of the Defendants'.

82. As a result of the Defendants' extreme and outrageous behavior the Plaintiff has suffered and will continue to suffer pain.

WHEREFORE, Plaintiff demands judgment, including interest, severally and jointly against Defendants' for actual, special, compensatory and punitive damages in an amount deemed at time of trial to be just, fair and appropriate and attorney's fees and costs.

## COUNT 9:
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

83. Plaintiff repeats and re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 82 above with the same force and effect as if herein set forth.

84. Defendants' breached their duties to the Plaintiff.

85. Defendants' negligently inflicted emotional distress on the Plaintiff.

86. Defendants' had a professional responsibility to the Plaintiff to execute their duties associated with their position and title as Public Servants and Officers of the court system.

87. Plaintiff suffered constant and intense emotional distress as a direct result of the Defendants' actions.

88. As a result of the Defendants' negligent conduct Plaintiff has suffered and will continue to suffer pain.

WHEREFORE, Plaintiff demands judgment, including interest, severally and jointly against Defendants' for actual, special, compensatory and punitive damages in an amount deemed at time of trial to be just, fair and appropriate and attorney's fees and costs.

## II.

Plaintiff adopts and incorporates by reference all allegations contained in the Original Complaint.

WHEREFORE, Plaintiff prays that this Amended Complaint be deemed good and sufficient and that defendants be duly cited to appear and answer this Amended Complaint; that they be served with a copy of same and that after all legal delays have expired and due proceedings had, there be judgment in favor of plaintiff, and against defendants including interest, severally and jointly against defendants' for actual, special, compensatory and punitive damages in an amount deemed at time of trial to be just, fair and appropriate and attorney's fees and costs.

Respectfully Submitted,

ANDRO MENDOZA, CHE, RRT, NPS
*PLAINTIFF PRO SE*

167 Cherry Street, #107
Milford, CT 06460

203/314.9438 phone
203/548.9223 fax

andro.r.mendoza@i2M1.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing pleading has been served on counsel for all parties on this 30th day of July 2005, by US MAIL.


ANDRO MENDOZA, CHE, RRT, NPS
*PLAINTIFF PRO SE*

167 Cherry Street, #107
Milford, CT 06460

203/314.9438 phone
203/548.9223 fax

andro.r.mendoza@i2M1.com